UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:24cv22786

JANEL NAVARRO,

     Plaintiff,

v.

MIAMI DADE COUNTY,

     Defendant(s).

_____/

## COMPLAINT AND DEMAND FOR TRIAL BY JURY

Plaintiff, JANEL NAVARRO ("Plaintiff" and/or "NAVARRO"), by her counsel, sues Defendant, MIAMI-DADE COUNTY, a political subdivision of the State of Florida ("Miami-Dade" and/or "Defendant"), and pleads as follows:

## NATURE OF THE ACTION

1.    This is an action under Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 to correct unlawful discrimination and retaliation in employment practices on the basis of national origin (Hispanic/Cuban American), race/color (White) and reprisal (opposition) and retaliation, and to provide appropriate relief to Plaintiff JANEL NAVARRO who was adversely affected by such practices.

## JURISDICTION

2.    Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, and 1343. This action is authorized and instituted pursuant to Sections 706(f)(1) and (3), and Section 717(c) of Title VII of the Civil Rights Act of 1964, as amended, codified at 42 U.S.C.A. Section

2000e-16(c), 2000e-5(f)(1) and (3) et seq. ("Title VII") and section 102 of the Civil Rights Act of 1991, as amended, codified at 42 U.S.C.A. Section 1981, et seq.; and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C.A. Section 791, the Civil Rights Attorney's Award Act, as amended, codified at 42 U.S.C.A. Section 1988, et seq.

3.     Venue is proper in the United State District Court for the Southern District of Florida, Miami Division, pursuant to 42 U.S.C., 2000e-5(f)(3). In addition, venue is proper herein as the primary actions complained of either occurred within or were directed within the geographical boundaries of the Miami, Florida (Southern District of Florida); and pursuant to 28 U.S.C. Section 1391(e).

4.     The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Southern District of Florida, Miami Division.

## ADMINISTRATIVE PREREQUISITES

5.     All conditions precedent to the institution of this action have been fulfilled. More than thirty (30) days prior to the institution of this lawsuit, Plaintiff filed a charge with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging violations of Title VII by Defendant. Specifically, Plaintiff Navarro filed charges of discrimination with the Equal Employment and Opportunity Commission on or about October 21, 2023.

6.     On or about June 28, 2024, the Department of Justice ("DOJ") issued a Notice of Right to Sue. This Complaint has been filed within ninety (90) days of the receipt of the Notice of Right to Sue; therefore, has met all conditions precedent to filing this Complaint.

## THE PARTIES

7.     Plaintiff, JANEL NAVARRO, at all relevant times, was an adult female and a resident and citizen of Miami-Dade County, Florida Plaintiff is a White/Cuban-American woman,

and a member of a class of persons protected from racial, reprisal, and national origin discrimination in employment.

8.      On or about January 1, 1999, Plaintiff was hired by Miami-Dade County Corrections and Rehabilitation Department as a corrections officer.  At all relevant times, was a correctional officer for Miami-Dade Corrections and Rehabilitation Department, thus an employee of Miami-Dade County. Plaintiff, at all times relevant, was an "employee" of the County as defined by Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq. ("Title VII"); 42 U.S.C. §1983.

9.      Defendant, MIAMI-DADE COUNTY was and is a political subdivision of the State of Florida. MIAMI-DADE COUNTY, by and through its agents, representatives, and/or employees, owns, operates, and/or controls the facility known as the Metro West Detention Center ("MWDC"), Miami-Dade Pre-Trial Detention Center ("PTDC"), and Turner Guilford Knight Correctional Center ("TGK").

10.      Defendant, Miami-Dade County is a municipal corporation and governmental subdivision of the State of Florida, existing and organized under the laws of the State of Florida and is liable for the acts and/or omissions of its employees and agents.

11.      Miami-Dade Department of Corrections and Rehabilitation ("MDCR") is a department of the County of Miami-Dade created pursuant to the laws of the State of Florida.

12.      Defendant, Miami-Dade County, is a sui juris municipality, and was Plaintiff's employer within the meaning of Title VII, 42 U.S.C. §1983, and the FCRA. Defendant  is a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b), and has continuously had at least 15 employees

## FACTS

13.     At all times relevant to this action, Sergeant Andre Williams[1] ("Lieutenant Williams") was a correctional Sergeant at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Sergeant Williams was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

14.     At all times relevant to this action, Sergeant Lieutenant McKenzie ("Sergeant McKenzie") was a correctional sergeant at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Lieutenant McKenzie was acting within the course and scope of her employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

15.     At all times relevant to this action, Sergeant Jean Frezin[2] ("Sergeant Frezin") was a correctional sergeant at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Sergeant Frezin was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

16.     At all times relevant to this action, Staffing Sergeant Nordia Watson ("Sergeant Watson") was a correctional Sergeant at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Sergeant Watson was acting within the course and scope of her employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

---

[1] Sergeant Williams is currently a Lieutenant, but at all times material hereto, Lieutenant Williams was a Sergeant.
[2] Sergeant Frezin is currently a Lieutenant, but at all times material hereto, Lieutenant Frezin was a Sergeant.

17.     At all times relevant to this action, Lieutenant Tony Vickers ("Lieutenant Vickers") was a correctional Lieutenant at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Lieutenant Vickers was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

18.     At times relevant to this action, Assistant Director Casandra Jones ("Assistant Director Jones") was the Assistant Director Casandra Jones at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Assistant Director Jones was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

19.     At all times relevant to this action, Captain Safani Summons ("Captain Summons") was a correctional Captain at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Captain Summons was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

20.     At times relevant to this action, Director James Reyes ("Director Reyes") was a the Director at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Director Reyes was acting within the course and scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

21.     At all times relevant to this action, Director J.D. Patterson ("Director Patterson") was a correctional Captain at Metro-West Detention Center and an employee of Miami-Dade County. At all times relevant to this action, Director Patterson was acting within the course and

scope of his employment and under color of state law, to wit, the statutes, ordinances, regulations, policies, customs, and usages of the State of Florida.

## STATEMENT OF CLAIMS

22. Beginning on or about April 1, 2021, and through on or about April 30, 2024, Defendant engaged in an unlawful employment practice at its Miami, Florida facility, in violation of Section 703(a)(1) of Title VII, 42 U.S.C. § 2000e-2(a)(1), by discriminating against Plaintiff with respect to her compensation, terms, conditions, and privileges of employment on the basis of National Origin (Hispanic, Cuban), Race (Hispanic), Color (White), Reprisal (voicing opposition to superiors), Disability (mental, ptsd, physical), as more fully set forth below.

23. On or about April 9, 2021, prior to the upcoming bid rotation for assignment/positions, Plaintiff emailed Sergeant Andre Williams, requesting that she be allowed to remain in her current position in the South Clinic. On or about April 15, 2021, Seargeant Williams denied Plaintiff's request to remain in her current position at the South Clinic, leaving Plaintiff unassigned to a consecutively assigned position, which are positions that are customarily assigned to rookie officers.

24. On or about May 14, 2021, Plaintiff approached Sergeant Andre Williams about work positions that were becoming available due to the retirement of senior officers, and Sergeant Williams asked Plaintiff to generate an email requesting consideration for the open positions/assignments in the North Clinic.

25. On or about May 14, 2021, Sergeant Williams verbally communicated to Plaintiff that positions/assignments would be assigned based on seniority.

26.    On or about May 15, 2021, Sergeant Williams denied Plaintiff's request to be assigned to the North Clinic. Instead, Sergeant Williams assigned Officer Stephens, an Black officer with less seniority, to said position/assignment.

27.    On July 15, 2021, Plaintiff emailed Lieutenant Mackenzie, Captain Safani Summons, and Assistant Director Casandra Jones. Specifically, Plaintiff questioned Sergeant Williams' motivations in determining which officers were assigned to permanent positions/assignments. Additionally, Plaintiff noted her concern in reporting the foregoing because she feared that Sergeant Williams would retaliate.

28.    On or about August 10, 2021, Plaintiff met with Lieutenant Tony Vickers, during which time Plaintiff verbalized **complaints** about Sergeant Williams preferential treatment to Black officers. Specifically, Plaintiff communicated that Sergeant Williams was assigning Black officers, with less seniority and qualifications than Plaintiff, to their requested positions/assignments, while denying those of Plaintiff's despite her being the second most senior officer.

29.    On or about August 17, 2021, Plaintiff sent a letter, via inter office mail, to Lieutenant Tony Vickers a letter in which she again communicated **complaints** about Sergeant Williams unfair and unlawful employment practices as described in paragraphs 23 and 26.

30.    On or about October 15, 2021, Plaintiff again asked Sergeant Williams to place her in one of the North and/or South Clinic positions.

31.    On or about October 25, 2021, Sergeant Williams again denied Plaintiff's request to be assigned to a consecutive position in the North and/or South Clinic.

32.    Despite being the second most senior officer, Plaintiff was the only officer who was not granted their requested assignment by Sergeant Williams. However, Sergeant Williams

assigned Black officers (including but not limited to officers C. Evans, T. Hightower, T. Stephens) with less seniority than Plaintiff to their requested assignments.

33.     Sergeant Williams actions described in paragraphs 23, 26, 31, 32 demonstrate that he preferentially treated the Blacks officers by assigning them to their requested assignments at the expense of the white/Hispanic officers with more seniority. Thus, Sergeant Williams discriminated against Plaintiff due to her race (Hispanic), color (white), and national origin (Cuban American).

34.     On or about October 25, 2021, Plaintiff complained to Sergeant Williams that the Black officers received their requested assignments despite having less seniority. In response to Plaintiff's complaint, Sergeant Williams cited to "attendance issues" as pretext for his race based discriminatory and unlawful employment actions described in paragraphs 25-27.

35.     On or about October 26, 2021, Plaintiff voiced complaints to Sergeant Williams about being denied her requested position, as well as the cited reason of an "attendance issue". Specifically, on or about October 26, 2021, Plaintiff communicated to Sergeant Williams that she did not have any "attendance issues" and that the only day she left early was on or about June 10, 2021, because she having trouble breathing which resulted in Plaintiff having to go to the HCA Florida Doral Emergency room where she was diagnosed with acute bronchitis. Plaintiff also told Seargeant Williams that she returned to work the following day, on or about June 11, 2021, with the proper documentation from HCA Florida Doral Emergency.

36.     Because Plaintiff was denied two positions at the North Clinic and South Clinic a result of Seargeant Williams' discriminatory employment actions as described in paragraphs 23, 26, 31-33, and because of Seargeant Williams' retaliatory animus toward Plaintiff stemming from Plaintiff's complaints as described in paragraphs 27-29, 34, 35. Plaintiff was forced to accept a

unit position supervising inmates in unit M3A3 at Metro West Detention Center ("MWDC"), requiring eight (8) hours of continuous inmate interaction.

37. When Plaintiff was forced to accept the unit position supervising inmates in unit M3A3 at MWDC on or about October 26, 2021, Plaintiff was the only senior officer assigned to a unit position as it was customary for senior officers to not be assigned to unit positions requiring eight (8) continuous hours of inmate interaction. Specifically, all Black senior officers were assigned to non-unit positions, such as movement and/or rover positions.

38. On or about October 28, 2021, Plaintiff voiced complaints to Lieutenant Tony Vickers about Sergeant discriminatory and retaliatory actions and that as a result she was the only senior officer assigned to a unit position.

39. On December 7, 2021, while working in unit M3A3 at Metro West Detention Center ("MWDC"), Plaintiff Navarro was violently attacked ("December 7th attack") by Inmate Jermaine Jones ("Inmate Jones"), resulting in Plaintiff suffering multiple serious and permanent injuries, as well as forcing Plaintiff to miss work for almost an entire month for which she had to use all her PTO time.

40. Seargeant Williams knew that forcing Plaintiff to work within unit M3A3 at Metro West Detention Center ("MWDC") would adversely affect Plaintiff's work environment as Plaintiff would be amongst inmates with histories of violence, such as the following incidents of battery on staff:

    a. September 4, 2021 – Incident No.: M2111391A

    b. September 15, 2021 - Incident No.:  M2111963A

    c. September 29, 2021 – Incident No.: M2112622A

    d. September 29, 2021 – Incident No.: M2112606A

41.     Seargeant Williams also knew that forcing Plaintiff to work within unit M3A3 at Metro West Detention Center ("MWDC") would adversely affect Plaintiff's work environment as Plaintiff would be amongst inmates with histories of violence, such as Inmate Jermaine Jones who had a history of being violent, which was known to Plaintiff's administration/supervisors. Inmate Jones had a history of attacking officers and inmates. Seargeant Williams, as well as Seargeant Francis, Lieutenant Vickers, Director Reyes, Director Patterson were aware of Inmate Jones' history of attacking officers and inmates based on the following:

   a. Inmates Joiner's attack on Officer Wayne Joiner (badge# 7400) on or about November 18, 2021, in unit 3C1 (Incident report M21-015382),

   b. Inmate Jones' Administrative Transfer Incident Report (M21-015415A) generated on or about November 18, 2021, at 11:12 AM, per Special Management Supervisor, Sgt Lesa Francis.[3] Inmate Jones was to be placed in Special Management Unit ("SMU") room#M142,

   c. On or about November 18, 2021, Inmate Jones was placed in disciplinary confinement, known as Special Management Unit (SMU), pending his disciplinary hearing for the Predatory Charge of attacking Officer Joiner. A Predatory charge is the highest disciplinary charge an inmate can be given during incarceration since it is associated with attacking staff members. Inmates being presented with this type of disciplinary charge are not to be released back into the general population prior to serving any and all confinement time if found guilty of the disciplinary charge.

   d. On or about November 23, 2021, SMU Sgt. Lesa Francis generated incident report (M21-015686A), removing Inmate Jones from SMU, clearing inmate Jones to go back to general population, and placing Inmate Jones back in general population before his disciplinary hearing for attacking Officer Joiner was conducted.

---

[3] During this time Sgt. Lesa Francis was on a probationary period. Per MWDC, a Seargent on a probationary period in cannot be the SMU supervisor.

e.  On or about November 23, 2021, incident report (M21-015715A) was generated to transfer Inmate Jones, during which time Inmate Jones still had an open predatory disciplinary charge for attacking a staff member.

f.  On or about November 24, 2021, an incident report (M21-015771A) was generated, placing inmate Jones into mental health population within TGK in unit K2-3 room #3313.

g.  On December 3, 2021, incident report K21-015923A was generated which cleared Inmate Jones out of mental health population at TGK. Inmate Jones was returned to MWDC and placed in general population unit M2A2 despite having a pending predatory disciplinary hearing.

h.  On or about December 6, 2021, incident report (M21-016376A) was generated for Battery on an inmate without a weapon. According to the narrative, Inmate Jones attacked Inmate Wimberly Jones (Jail # 21-0133391) and was moved to general population unit M3A3 despite having a pending predatory disciplinary hearing.

42.  Seargeant Williams knew that placing Plaintiff to work within unit M3A3 at Metro West Detention Center ("MWDC") would adversely affect Plaintiff's work environment as Plaintiff would be in unsafe working conditions, with improperly trained staff, amongst inmates based on the following:

a.  SMU Supervisor Sergeant Lesa Francis cleared Inmate Jones and signed off on the report (Incident Report M21-015686A dated November 23, 2021) that removed him from confinement prior to his disciplinary hearing for attacking Officer (Wayne Joiner, allowing Inmate Jones back into general population at MWDC and around officers at MWDC.

b.  Despite never working SMU as an Officer or Corporal, Sergeant Williams assigned Sergeant Lesa Francis, a Black, to the position of Special Management Supervisor as a newly promoted probationary Sergeant contrary to MWDC policy which requires that the SMU supervisor not be on probationary status.

c.  Specifically, to be assigned to the SMU Sergeant position, Sergeants interested in the position must not be on probationary status to apply, go through an

interview panel consisting of three (3) Correctional Employees to be chosen by headquarters and pass the interview to be granted the position. Sergeant Francis met none of the foregoing requirements when Seargeant Williams assigned Sergeant Francis as the SMU supervisor, nor had Sergeant met the foregoing requirements by December 7, 2021.

d. Per MWDC policy DSOP16-001, Inmate Jones should have been served disciplinary charges and attended a disciplinary hearing within seven (7) days of attacking Officer Joiner on November 18, 2021.

e. On or about November 30, 2021, Inmate Jones was served with disciplinary charges for attacking Officer Joiner, and at the Disciplinary Hearing Inmate Jones was found guilty on the Predatory charge and guilty on the Disruptive charge. Despite the forgoing, Inmate Jones was left general population at Metro West Detention Center (general population) for seven (7) days after being found guilty on both charges, rather than being sent back to SMU immediately. This delay of seven (7) days allowed Inmate Jones to be in general population at Metro West Detention Center on December 7, 2021, which provided Inmate Jones with the opportunity to attack Plaintiff.

f. Had Sergeant Lesa Francis been qualified for the job of SMU Supervisor, she would have known that per MWDC policies, inmates pending a predatory disciplinary hearing must got to a 1st generation facility (behind bars) which would be TGK or the Pre Trial-Detention Center, they are never to be cleared and/or placed in a 3rd generation setting known as open bay such as West Detention Center.

g. On December 7, 2021, when Plaintiff was attacked only one (1) elevator out of the five (5) elevators within Metro West Detention Center was working. The one (1) working elevator was located a quarter mile away from the unit where Plaintiff was attacked, causing a significant delay in help arriving on the scene.

h. On December 7, 2021, staff attempting to respond to Plaintiff's calls for help during the December 7th attack could not access the stairwell as it is common practice for officers to use the elevators, and the stairs are only accessible by central control or north side corporal/supervisor keys.

      i.   Moreover, because four of the five elevators were not functional, Plaintiff was forced to go down three (3) flights of stairs with an open head wound.

      j.   Additionally, Plaintiff's body alarm (the second line of defense for officers locked inside units) was not working when Plaintiff was attacked on December 7, 2021.

      k.   For approximately six months prior to Plaintiff's attack on December 7, 2021, Miami Dade County was aware that the body alarm system was not operational down for those in Plaintiff's unit (M3A3). Specifically, six (6) months prior to the December 7th attack on or about June 24, 2021, MWDC was notified that the body alarms were not operational when Officer Lashara Cope (badge #7763) submitted a repair request (incident report M21-007928A).

43.    On or about January 4, 2022, Plaintiff Navarro returned to work on light duty status and was assigned to the employee entrance.

44.    On April 7, 2022, Lieutenant McKenzie, who is Black, transferred Plaintiff from the employee entrance to visitation without being provided any legitimate reason. However, the actual reason for transfer was race based as Lieutenant McKenzie wanted to accommodate Officer Sharonna Paul, another Black with less seniority.

45.    On or about September 1, 2022, Staffing Sergeant Watson, who is Black, preferentially treated a Black officer with less seniority than Plaintiff as she assigned Officer Jarnesha Grier to roof detail at MWDC, even though Officer Grier arrived to work two hours late that day. Plaintiff requested the medical accommodation of not being sent to TGK as her PTSD, stemming from the December 7th attack, is triggered and her anxiety greatly intensifies when encountering changes in location. Sergeant Watson denied Plaintiff's requests for said medical accommodation.

46.    On or about September 1, 2022, Plaintiff complained to Captain Summons and Lieutenant McKenzie about Sergeant Watson's discriminatory acts described in paragraph 45, Plaintiff also communicated that she needed to be placed in a permanent light duty position at

MWDC because since the December 7, 2021, attack, she had been experiencing PTSD when exposed to unfamiliar locations. Plaintiff also informed Captain Summons and Lieutenant Mckenzie that she was being treated by a psychiatrist and psychologist in an effort to progress mentally.

47.   On September 15, 2022, in retaliation for Plaintiff's complaints as described in paragraph 50, Sergeant Watson, being aware that assigning Plaintiff to TGK would trigger Plaintiff's anxiety and PTSD, instructed Plaintiff to report to Pre-Trial Detention Center. Plaintiff again requested a medical accommodation to not be sent to Pre-Trial Detention Center as it would trigger her anxiety and PTSD, however Sergeant Watson denied said medical accommodation.

48.   On or about September 15, 2022, Plaintiff was unable to work as her anxiety and PTSD were triggered upon being assigned to Pre-Trial Detention Center, per Sergeant Watson' orders.

49.   On or about September 15, 2022, Sergeant Watson transferred Plaintiff to TGK and hired Officer Shondra Miller (Black) to a light duty at MWDC (roof detail). Instead of assigning Plaintiff to said position, Sergeant Watson hired another black officer on light duty with less seniority than Plaintiff. Specifically, Sergeant Watson hired Officer Shondra Miller, a Black officer with less seniority, on overtime. Sergeant Watson hiring of Officer Miller was not only discriminatory in that she hired another black officer on light duty with less seniority than Plaintiff, but it was also retaliatory in that light of Plaintiff's complaints described in paragraph 50.

50.   Sergeant Watson's retaliatory animus toward Plaintiff in paragraph 53 is evidenced by the fact that Sergeant Watson could've assigned easily Plaintiff to roof detail, instead of hiring of an overtime employee which exposed the County to additional and unnecessary costs.

51.   Sergeant Watson actions in described in paragraphs 51-54 were an attempt to increase the level of hostility that Plaintiff was subjected to, as well as to instill fear amongst employees

who voice complaints or participate in investigations related to discriminatory/retaliatory misconduct in the workplace.

52.    Again, on or about October 13, 2022, despite being aware that assigning Plaintiff to TGK would trigger Plaintiff's anxiety and PTSD, Sergeant Watson ordered Plaintiff to report to TGK. Plaintiff complained to Sergeant Watson that Seargeant Watson was giving preferential treatment to the Black officers on light duty as they were not being sent out to different facilities, while she and Officer W. Nazario, both of whom are white, Hispanic, and on light duty, were being sent out to different facilities. Plaintiff demanded to speak with Sergeant Frezin about the situation.

53.    Sergeant Watson, an Black, preferentially treated the Blacks officers on light duty by exempting them from being sent to different facilities, while sending the white and Hispanic officers on light duty, such as Plaintiff, to different facilities.

54.    On or about October 13, 2022, while in the shift commander area, Plaintiff voiced **complaints** to Sergeant Watson about being sent to different facilities when on light duty, while Black officers on light duty were not subject to said treatment. Immediately after Plaintiff voiced her complaints, Sergeant Watson, reviewed the surveillance footage from the area, requested statements from all staff that witnessed Plaintiff's complaints, and asked them to document what they witnessed. Sgt. Watson intended to use these statements to generate disciplinary documentation to retaliate against Plaintiff for questioning her discriminatory work actions.

55.    On or about October 13, 2022, Plaintiff met with Sergeant Frezin and **made verbal complaints** that she and Officer W. Nazario, both white, Hispanic, on light duty, were being treated differently than similarly situated back officers as the Black officers on light duty were not sent to different facilities, while the white/Hispanic officers were sent to different facilities.

56.     Sergeant Frezin, who is black, ignored Plaintiff's complaints described in paragraph 59, failed to take any corrective actions, and on or about October 13, 2022, denied Plaintiff's request, via email on, for medical accommodations to not be sent to different facilities.

57.     On or about October 13, 2022, instead of leaving Plaintiff assigned to MWDC, Sergeant Watson transferred Plaintiff to TGK for the day and again hired Shondra Miller, a Black officer with less seniority, on overtime. Again, said hiring not only demonstrates Sergeant Watson's discrimination and retaliatory animus toward Plaintiff but also, Sergeant Watson's preferential treatment toward Black officers considering that Sergeant Watson could've assigned Plaintiff to roof detail instead of hiring of an overtime employee which exposed the County to additional and unnecessary costs

58.     Moreover, on or about October 13, 2022, knowing that it would trigger Plaintiff's anxiety and PTSD, Sergeant Watson forced Plaintiff to monitor a live feed of Inmate Jones, the inmate who attacked Plaintiff on December 7, 2021, to ensure his safety.

59.     On October 18, 2022, Plaintiff sent a personnel complaint to Lieutenant McKenzie regarding Sergeant Watson's discriminatory and/or retaliatory actions as described in paragraphs 45-49, 51-58, 60-62. Plaintiff also included a letter from her doctor, advising that Plaintiff required placement within a stable and predictable work environment.

60.     On or about October 21, 2022, Plaintiff submitted an EEOC charge (510-2023-00508) complaining about being subjected to discrimination/retaliation while working for the Miami-Dade Corrections and Rehabilitation Department. That same day, Sargeant Watson falsely accused Sergeant Almond and Sergeant Cox of having provided Plaintiff with documentation/information to draft the complaint.

61.    On or about February 5, 2023, Plaintiff was pre-hired by Sergeant Almond to work overtime on February 6, 2024, However, when plaintiff reported to work, Sergeant Watson told Plaintiff that she should have never been hired to work overtime and sent Plaintiff for home. Sergeant Watson did not articulate any reason as to why she claimed that Plaintiff should have never been hired to work overtime.

62.    In fact. Sgt. Watson's retaliatory behavior as described in paragraph 54 was simply an attempt to increase the level of hostility that Plaintiff was exposed to in the workplace, as well as an attempt to instill fear amongst employees who voice complaints, or participate in any investigation, related to her discriminatory retaliatory actions

63.    As described in paragraphs 23, 26, 31-37, 39-42, 44, 45, 48, 49, 51, 52-58, 60-62 Plaintiff, supervisors, including Sergeant Watson, Sergeant Frezin, Lieutenant McKenzie treated Plaintiff less favorably than similarly situated individuals outside her protected class (black employees).

64.    Despite Defendant's knowledge of the discriminatory acts described in paragraphs 23-26, 30-32, 34-37, 39-49, 51-58, 60-62 and the retaliatory acts described in paragraphs 31, 36, 39-43, 47-52, 54, 56-58, 61, 62 Plaintiff by supervisors, Defendant failed to take any corrective action

65.    As a result of Plaintiff's national origin (Hispanic/Cuban American), race/color (White) and reprisal (opposition), Defendant, via Plaintiff's supervisors, subjected Plaintiff to discrimination and adverse actions by failing to treat her the same or similar to its Black employees as described in paragraphs 23-26, 30-32, 34-37, 39-49, 51-58, 60-62.

66.    As a direct and proximate result of the acts described in 23-26, 30-32, 34-37, 39-43, Plaintiff would not have been subjected to the December 7th attack which resulted in Plaintiff suffering from PTSD that forced Plaintiff to retire without a deferred retirement option program

("drop"). Specifically, Because of Plaintiff's mental disability as a result of the December 7th attack, Plaintiff was unable to cleared back to full duty an ineligible for drop, thus losing out on seven years of drop, which cost Plaintiff significant amounts of money.

<u>**COUNT I**</u>
<u>**(Discrimination Based on National Origin, Color and Race)**</u>
<u>**(Title VII of the Civil Rights Act of 1964, U.S.C. §§ 2000(e), et. Seq.)**</u>

67. Plaintiff JANEL NAVARRO incorporates by reference the allegations paragraphs 1-27, 29-37, 39-46, 48, 49, 51-58, 60-66.

68. Defendant was at all times material the "employer" of Plaintiff as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(1).

69. The Plaintiff was at all times material an "employee" of Defendant, as the term is defined by the Civil Rights Act, 42 U.S.C. § 2000e(f).

70. Plaintiff is a female and was an employee of Defendant within the meaning of 42 U.S.C. §2000(e) et. seq. and is a member of a protected class.

71. Plaintiff possessed the skills, background, and qualifications necessary to perform the duties of her position.

72. As a result of Plaintiff's national origin (Hispanic/Cuban American), race/color (White), Defendant, via Seargeant Williams, subjected Plaintiff to discrimination and adverse actions by failing to treat her the same or similar to its Black employees as described in paragraphs 23-26, 30-32, 34-37, 39-43.

73. As a result of Plaintiff's national origin (Hispanic/Cuban American), race/color (White), Defendant, via Seargeant Watson, subjected Plaintiff to discrimination and adverse

actions by failing to treat her the same or similar to its Black employees as described in paragraphs 45-49, 51-58, 60-62.

74.     As a result of Plaintiff's national origin (Hispanic/Cuban American), race/color (White), Defendant, via Seargeant Frezin, subjected Plaintiff to discrimination and adverse actions by failing to treat her the same or similar to its Black employees as described in paragraphs 56.

75.     As a result of Plaintiff's national origin (Hispanic/Cuban American), race/color (White), Defendant, via Seargeant McKenzie, subjected Plaintiff to discrimination and adverse actions by failing to treat her the same or similar to its Black employees as described in paragraphs 44, 46.

76.     The effect of the discrimination and unlawful employment practices complained of in paragraphs 23-26, 30-32, 34-37, 39-49, 51-58, 60-66above has been to deprive Plaintiff since at least on or about April 15, 2021, of equal employment opportunities and otherwise adversely impact her status as an employee because of her National Origin (Cuban American) and Race (White/Hispanic).

77.     The unlawful employment practices complained of in 23-26, 30-32, 34-37, 39-49, 51-58, 60-65 above were intentional and caused Plaintiff Navarro to lost earnings, compensation, lost benefits, mental anguish, loss of dignity, and other intangible injuries.

78.     The unlawful employment practices complained of in 23-26, 30-32, 34-37, 39-49, 51-58, 60-65 above were engaged in with malice or with reckless indifference to the federally protected rights of Plaintiff Navarro.

79.     The unlawful employment practices complained of in 23-26, 30-32, 34-37, 39-49, 51-58, 60-65 above were intentional, willful, malicious, deliberate, and caused Plaintiff Navarro to suffer emotional distress, including but not limited to emotional pain, suffering, inconvenience,

loss of enjoyment of life, humiliation and/or personal stress, mental and physical pain and suffering, permanent injury/disability, such as PTSD, permanent field vision loss due to optic nerve damage, as well as permanent hearing loss.

Wherefore, Plaintiff, JANEL NAVARRO, respectfully request that this Court:

i.   Find Defendant's actions toward Plaintiff to be in violation of her rights under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a), for engaging in in discrimination against employees on the basis of national origin (Hispanic/Cuban American), race/color (White) and reprisal (opposition);

ii.  Order Defendant to make Plaintiff whole by providing appropriate compensation with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to lost and/or reduced employee benefits and retirement benefits;

iii. Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, medical expenses, and any other pecuniary losses, in amounts to be determined at trial;

iv.  Order Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

v.    Award Plaintiff her costs of this action, including reasonable attorneys' fees under 42 U.S.C.A. § 2000e-5; Fla. Stat. § 760.11 (2004); and 42 U.S.C.A. §§ 12203 and 12205; and pre-judgment interest, and;

vi.   Grant such further relief as the Court deems necessary and proper in the public's interest.

2.    As a result of Plaintiff's national origin (Hispanic/Cuban American), race/color (White), Defendant, via Seargeant Williams, subjected Plaintiff to discrimination and adverse actions by failing to treat her the same or similar to its Black employees as described in paragraphs ___.

## COUNT II
### (Retaliation)
### (Title VII of the Civil Rights Act of 1964, U.S.C. §§ 2000(e), et. Seq.)

80.   Plaintiff NAVARRO realleges and incorporates by reference the allegations in paragraphs 1-22, 28, 29, 34, 35, 38, 46, 51, 52, 54-56, 59, 60-62, 66  above as if set forth herein.

81.   Plaintiff NAVARRO, at all times material hereto, undertook protected conduct when she complained of unlawful employment actions as described in paragraphs 28, 29, 34, 35, 38, 46, 51, 54-56, 59, 66 and when she filed her charge of discrimination with the EEOC on or about October 21, 2023, as described in paragraph 60.

82.   As a direct and proximate result of participating in protected activity, as described in paragraph 28, 29, 34, 35, 38, 46, 51, 54-56, 59, 60, Plaintiff suffered material adverse employment actions, as outlined in paragraphs 31, 36, 39-43, 47-52, 54, 56-58, 61, 62, 66. These actions would deter a reasonable employee from engaging in protected activity.

83.   A causal nexus exists between Plaintiff undertaking of the protected conducted complained of in paragraphs 28, 29, 34, 35, 38, 46, 51, 54-56, 59, 60, above and the material

adverse action taken by Defendant against her in paragraphs 31, 36, 39-43, 47-52, 54, 56-58, 61, 62, 66.

84. Defendant acting through its authorized representatives (Sergeant Williams, Lieutenant McKenzie, Sergeant Frezin, Sergeant Watson, Lieutenant Vickers) retaliated against Plaintiff, for engaging in workplace protected activity as set forth in Paragraphs 28, 29, 34, 35, 38, 46, 51, 54-56, 59, 60 in direct violation of Section 704(a) of Title VII, 42 U.S.C. Section 2000e-3 (a)

85. All conditions precedent to bringing this action have been performed or occurred as outlined in paragraphs 5-6 above.

Wherefore, Plaintiff, JANEL NAVARRO, respectfully request that this Court:

i. Find Defendant's actions toward Plaintiff to be in violation of her rights under the Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. Section 2000e-3(a), for engaging in predicate unlawful acts of retaliation;

ii. Order Defendant to make Plaintiff whole by providing appropriate compensation with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including but not limited to lost and/or reduced employee benefits and retirement benefits;

iii. Order Defendant to make Plaintiff whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, including but not limited to, medical expenses, and any other pecuniary losses, in amounts to be determined at trial;

iv.    Order Defendant to make Plaintiff whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of above, including but not limited to, emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, and loss of civil rights, in amounts to be determined at trial.

v.    Award Plaintiff her costs of this action, including reasonable attorneys' fees under 42 U.S.C.A. § 2000e-5; Fla. Stat. § 760.11 (2004); and 42 U.S.C.A. §§ 12203 and 12205; and pre-judgment interest, and;

vi.    Grant such further relief as the Court deems necessary and proper in the public's interest.

## JURY TRIAL DEMAND

Pursuant to Federal Rule 38(b), trial by jury on all issues presented herein is respectfully demanded.

Respectfully submitted,

/s/    *David M. Fraguio*

**DAVID M. FRAGUIO, ESQ.**
Florida Bar No.: 1016475
**VICTOR A RUIZ, ESQ.**
Florida Bar No. 85353
*Attorneys for Plaintiff*
VICTOR A. RUIZ, P.A.
8660 W. Flagler Street
Suite 100
Miami, Florida 33144
Email: David@ruiz.legal